UNITED STATES of America,
Plaintiff–Appellee,

v.

Randall Ray WILLOUGHBY,
Defendant–Appellant.

No. 92–3611.

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1994.

Decided June 17, 1994.

Victoria Ursulskis, Steven DeBrota (argued), Indianapolis, IN, for U.S.

Robert B. Keene (argued), Indianapolis, IN, for Randall R. Willoughby.

Before BAUER, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Randall Ray Willoughby was charged with eight counts of distributing cocaine and two counts of possessing cocaine with the intent to distribute, all in violation of 21 U.S.C. § 841(a)(1), and one count of "using or carrying" a gun "during and in relation to ... the distribution of cocaine" in violation of 18 U.S.C. § 924(c). Willoughby entered a plea of guilty to the various drug crimes but proceeded to trial before the bench on the firearm charge. The district court found Willoughby guilty as charged and sentenced him to 270 months in prison—210 months for the drug offenses and 60 months for the weapons offense. Willoughby appeals only the § 924(c) conviction on the ground that the evidence was insufficient to prove that the gun was used or carried in relation to the distribution of cocaine as charged in the indictment. We reverse.

In eight separate controlled buys, Willoughby sold a total of nearly 64 grams of cocaine to a confidential informant. After concluding the final sale, Willoughby was arrested and searched. The search uncovered 8.09 grams of cocaine, 65 dosage units of Dilaudid (hydromorphone hydrochloride), the $1,000 given in the controlled buy, and an additional $1,800. After receiving *Miranda* warnings, Willoughby consented to a search of his residence. During the search, the officers spoke with a woman who told them that she had rented a storage unit to Willoughby. She said that she had not been to the unit since renting it. Willoughby confirmed this information and consented to a search of the unit.

Inside the unit was an inoperable Datsun automobile with several tools lying around it. A brown cardboard box sat next to a suitcase on the backseat of the car. Inside the box were a loaded .22 caliber revolver, triple beam scales, several sandwich-sized plastic baggies, and some loose coins and jewelry. The adjacent suitcase contained 164 grams of cocaine, 47.1 grams prepackaged in 91 small ziploc baggies, and several hundred empty small plastic baggies identical to the bags holding the cocaine that had been sold in the earlier controlled buys. The officers testified at trial that the large quantity of cocaine and the drug paraphernalia found in the storage unit indicate that the cocaine was being stored and packaged for subsequent distribution rather than for personal use. The government also established that the gun was

loaded, operable and in close proximity to the drugs when discovered.

Following the close of the government's case, Willoughby moved for a judgment of acquittal on the ground that the government had failed to prove that the gun had been used or carried in relation to the charged offense. The court took the motion under advisement. Willoughby then took the stand in his own defense, claiming that he did not own the gun and was merely storing it for its owner. The court found Willoughby guilty of the weapons offense. On appeal, Willoughby challenges the district court's determination that he "used or carried" the gun "during and in relation to" the drug trafficking offense named in the weapons count, *i.e.,* the distribution of cocaine. Specifically, he contends that because the language of the indictment charged him with using the gun during and in relation to the distribution of cocaine as opposed to the possession with intent to distribute cocaine, there must be some evidence that the gun facilitated a distribution for the § 924(c) conviction to stand. The evidence was insufficient, he argues, because there was no evidence of distribution of cocaine at the storage unit, nor was there sufficient proof that the gun was either used or carried in connection with the distribution of drugs elsewhere.

 The theory under which the mere presence of a firearm in the vicinity of a drug cache not associated with any on-site buying or selling activity can sometimes constitute sufficient evidence to sustain a § 924(c) conviction is that an accessible weapon can serve to protect the defendant's illicit and valuable inventory. *See, e.g., United States v. Villagrana,* 5 F.3d 1048, 1052 (7th Cir.1993). Since possession with intent to distribute is a "drug trafficking activity" within the meaning of § 924(c), *see United States v. Nash,* 876 F.2d 1359, 1361–62 (7th Cir.1989), *cert. denied,* 493 U.S. 1084, 110 S.Ct. 1145, 107 L.Ed.2d 1049 (1990), no actual transacting need be associated with a gun as long as it can be said that under the circumstances (factors like accessibility, whether the gun was loaded, the amount of drugs, the presence of other guns are frequently found relevant) the gun facilitated the possession of to-

be-distributed drugs. *See United States v. Woods,* 995 F.2d 713, 718 (7th Cir.1993). Though engendering criticism elsewhere, *see, e.g., United States v. McFadden,* 13 F.3d 463, 466–71 (1st Cir.1994) (Breyer, C.J., dissenting), and applied with varying strictness, *compare United States v. Derr,* 990 F.2d 1330, 1337–39 (D.C.Cir.1993), *and United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2nd Cir.1988), *with United States v. Jones,* 990 F.2d 1047, 1049 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 699, 126 L.Ed.2d 666 (1994), the approach is well-established in this circuit. With respect to the cocaine found in the storage unit, Willoughby pled guilty to possession with intent to distribute. Even if he were not charged separately with or convicted of that crime, *see, e.g., United States v. Hill,* 971 F.2d 1461, 1463–64 (10th Cir.1992) (en banc); *United States v. Wilson,* 884 F.2d 174, 176–77 (5th Cir.1989); *United States v. Bailey,* 995 F.2d 1113, 1121 (D.C.Cir.1993) (D. Ginsburg, J., dissenting), *vacated, reh'g en banc granted,* 4 F.3d 1004 (1993), the presence of a loaded gun in close proximity to a distributable quantity of drugs may have sufficed to prove beyond a reasonable doubt that he used that firearm in connection with the drug trafficking offense of possession with intent to distribute. The problem in this case arises not because of want of sufficient evidence linking Willoughby to *a* drug trafficking offense but because of the lack of evidence linking him to *the* drug trafficking offense specified in the § 924(c) section of the indictment.

 Proof of an offense at trial may depart from the framework of the indictment in two principal ways. The proven elements of a sustainable conviction are sometimes narrower than the full scope of the charge in the sense that the charge states all and more than what is necessary to identify the offense and sufficient evidence is not introduced to support each of the excess allegations. Such an occurrence is typically labeled a variance and is subject to harmless error review. The defendant was, in theory, fully informed of what was to become the offense of conviction; the essential question is whether the initial statement of that offense to which the defendant was entitled was so obfuscated by the

breadth of the charging instrument that he was unfairly surprised or otherwise prejudiced in the conduct of his defense (or a risk of double jeopardy was created). *See United States v. Thompson,* 23 F.3d 1225, 1230 (7th Cir.1994) On the other hand, trial proof sometimes goes beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury. Termed a constructive amendment of the indictment, such error, which in a jury trial can also be generated or exacerbated by faulty instructions, violates the Fifth Amendment since the Grand Jury Clause limits the available bases for conviction to those contained in the indictment. *See Schmuck v. United States,* 489 U.S. 705, 717–18, 109 S.Ct. 1443, 1451–52, 103 L.Ed.2d 734 (1989). A resulting conviction cannot stand because there is no assurance that it matches the offense charged. It is, in other words, reversible *per se. See Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). At the same time, it is important to note that not all variations in proof that contradict or supplement verbiage in the indictment *rise to the* level of constructive amendments. Like variances, some are generally benign in that they do not create a risk of conviction for an uncharged offense. These typically involve the correction of mere technical errors contained in the indictment, of a typographical or clerical nature for example, which would not alter the essential substance of the charged offense. *See United States v. Leichtnam,* 948 F.2d 370, 376 (7th Cir.1991).

■ Obviously, whether a discrepancy is of constitutional dimension—that is, whether it constitutes an often-permissible narrowing or technical correction of the indictment as opposed to a never-permissible broadening of the indictment—turns on the role a departed-from allegation plays *in the indictment.* So long as a part of the indictment is unnecessary to *and* independent of the components of a charged, proven and found offense, proof diverging from it does not necessarily work a constructive broadening of the possible bases for conviction. If, on the other hand, an allegation is either necessary to or is made essential to the offense as charged, failure to support it with appropriate proof at trial,

even if evidence does establish what would have been an adequate replacement offense if charged, is fatal. What becomes essential to a charged offense in a particular case—that is, above and beyond what is necessary as a statutory matter—depends upon the structure of the indictment, *see Leichtnam,* 948 F.2d at 377–78, and is thus completely within the government's control.

■ In this case, Count 11 of the indictment charged Willoughby with the use of a firearm "during and in relation to a drug trafficking crime, *to wit: the distribution of cocaine* ..." (emphasis added). "To wit" is an expression of limitation which, as our cases indicate, makes what follows an essential part of the charged offense. *See United States v. Goines,* 988 F.2d 750, 773 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993); *Leichtnam,* 948 F.2d 370 at 374, 379. A conviction that rests, no matter how comfortably, on proof of another offense cannot stand. *See United States v. Miller,* 471 U.S. 130, 138–40, 144, 105 S.Ct. 1811, 1816–18, 1819, 85 L.Ed.2d 99 (1985). Thus, even if an adequate § 924(c) charge need not indicate by name a particular drug trafficking offense, by the way it framed the indictment in this case, the government narrowed the legitimate scope of the weapons charge to Willoughby's use of a firearm in connection with the distribution of cocaine, not the mere possession with intent to distribute cocaine or "drug trafficking" generally. A conviction relying upon a link between the gun and the latter described conduct would constitute an impermissible broadening of the indictment, for its basis was necessarily excluded from the charge as phrased.

The discrepancy here is more than a simple matter of semantics unrelated to the substance of the offense charged. *See, e.g., United States v. Jungles,* 903 F.2d 468, 476 (7th Cir.1990). Distribution and possession with intent to distribute are two separate trafficking offenses, two separate crimes of which Willoughby was in fact independently accused and convicted (by virtue of his plea). Willoughby distributed the cocaine involved in the controlled buys and possessed, with intent to distribute, the cocaine found on his

person and in the storage unit. Because "distribution" relates to different conduct than does "possession with intent to distribute", not just in theory, but in this case, a charge referencing one of these trafficking offenses cannot be deemed the equivalent of a charge referencing the other. And since no evidence linked the gun to Willoughby's actual distribution of cocaine (taking place miles from where the gun was found) and no evidence indicated that any distribution occurred at the storage facility (packaging drugs for later distribution is not distribution—that is why possession with intent to distribute is such a popular drug charge) and because a hypothetical future distribution is not a legitimate basis for a current conviction, the weapons conviction could only have been based upon a possession-protection theory, a valid ground in this circuit but not when it falls outside the scope of the indictment. Willoughby's motion for a judgment of acquittal should have been granted.

While we reverse Willoughby's conviction on Fifth Amendment grounds, we feel that we must comment upon the district court's apparent misapprehension of its role when sitting as the finder of fact in a criminal trial of this type and of the impact appellate decisions in other cases has on that role. In announcing its finding of guilt on the weapons charge the district charge stated:

If it had been a case of first impression, I don't mind telling you that I would have agreed with Mr. Willoughby. I couldn't see he used that weapon. Obviously, he couldn't be carrying it if it was in the trunk of his car.

*But, any number of cases, including some from the Seventh Circuit, have stretched the law, in my opinion, and held that yes, indeed, if there is a weapon in the presence of drugs*—and there is no doubt but what the defendant intended to sell the drugs and possessed them, of course—*that counts and must result in a finding of guilty.*

I cannot singlehandedly overrule the previous holdings of my superiors. And, therefore, with reluctance, I must find and do find Mr. Willoughby guilty as charged in Count 11. (emphasis added)

The cases and holdings to which the district court referred, cases like *Villagrana* and *Woods,* are rejections to challenges to the sufficiency of the evidence adduced at trial in support of § 924(c) charges. As such they stand for two propositions, neither of which amounts to anything like a pronouncement that the presence of a firearm in the vicinity of a distributable quantity of drugs mandates a finding of guilt on a § 924(c) charge. They do confirm that to strategically place a firearm near a drug stash as a means to safeguard the contraband is to "use" that weapon during a drug trafficking offense within the meaning of § 924(c). Further, they decide that under the particular circumstances being reviewed a rational fact finder could have concluded beyond a reasonable doubt that such use took place. But they do not say a gun near drugs automatically indicates use of that sort. First of all, the inquiry must be and has always been more searching; the legitimacy of an inference is a circumstantial, not formulaic, matter. The factors that our opinions have weighed—factors like whether the gun was loaded, where it was placed, how it was placed, what else was present, *etc.*—were not surplus considerations. Secondly, and more fundamentally, appellate approval of the sufficiency of the evidence is just that, a judgment as to the bare sufficiency of the evidence in support of the result reached below and not the reviewing court's "own subjective determination of guilt or innocence." *Jackson v. Virginia,* 443 U.S. 307, 319 n. 13, 99 S.Ct. 2781, 2789 n. 13, 61 L.Ed.2d 560 (1979). Our affirmances in this area do not say that under similar or even identical circumstances a fact finder *must* draw the same inference, only that such an inference is not in the case at hand so shaky to be insufficient as a matter of law. Appellate courts cannot direct guilty verdicts, either in cases currently before them or in cases yet to come. They evaluate evidence only when a defendant challenges the persuasiveness of the trial proof and then only to determine its minimal adequacy. An affirmance means no more than that from an appellate perspective the fact finder has performed its duties satisfactorily; following its mandate, it arrived at a rational result. An affirmance on the evi-

dence generates no precedential force upon the decisionmaking processes of fact finders at criminal trials, whether jury or judge. The *stare decisis* influence of such a decision extends no further than to other appellate tribunals in the same jurisdiction faced with comparable challenges to the sufficiency of the evidence.

When a defendant elects to proceed to trial before the bench, the district court is acting in the stead of the jury when making the ultimate decision of guilt or innocence. There is perhaps no duty more grave and more lonely than that charged to the trier of fact. The district court by itself must determine after hearing and considering all of the evidence whether the prosecutor overcame the presumption of innocence, leaving no reasonable doubt that the defendant committed the offense charged. The district court must interpret for itself the evidence in a case and find guilt only if it is persuaded of such. Any understanding that decisions upholding a conviction against an attack based on the evidence purport to remove from the district courts what is within their sole province is fundamentally mistaken. The obligation to find the facts and determine whether the elements of the offense are established rests always and exclusively with the trier of fact in each case. This is the essence of our system of individualized justice.

REVERSED.