**James D. LOSEY, Petitioner,**

v.

**Matthew FRANK,[1] Secretary, Wisconsin Department of Corrections, Respondent.**

**No. 02–C–1252.**

United States District Court, E.D. Wisconsin.

June 16, 2003.

---

1. Petitioner previously brought this action under a different caption but because he is being held in a Wisconsin correctional institution the proper respondent is Matthew Frank, Sec-retary of the Wisconsin Department of Corrections. The caption has been amended accordingly.

Pro Se, for Plaintiff or Petitioner.

Warren D. Weinstein, for Defendant or Respondent.

2. Nunchakus are a martial arts weapon consisting of two sticks connected by a rope,

## DECISION AND ORDER

ADELMAN, District Judge.

Petitioner James D. Losey seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 arguing that he is being unconstitutionally detained for retrial on a charge of armed robbery, his original conviction having been set aside. He argues that the State of Wisconsin may not retry him without violating the Fifth Amendment's prohibition of double jeopardy.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was charged in Rock County Circuit Court with a two-count information charging him with armed robbery (defined in Wis. Stat. § 943.32(2) as robbery "by use or threat of use of a dangerous weapon"), and being a felon in possession of a firearm. The armed robbery count specified that on December 18, 1998, petitioner committed robbery "while armed with a dangerous weapon, to wit, an automatic handgun." (Answer Ex. C App. at 101.)

At the trial, Jennifer Williams testified that while she was working as a cashier in a Shoney's restaurant petitioner reached his right hand into the cash register and grabbed some twenty dollar bills, and that she observed the barrel of a gun in his left hand. Miles Blodgett testified that as he entered the restaurant, he saw a man run out and disappear around the side of the building, and that the man dropped and picked up an object that he thought "was a set of nunchakus, but tubular."[2] (Answer Ex. G at 102.) Police officer Dennis Tuszynski testified that petitioner denied having a gun and asked why he was charged with armed robbery.

cord, or chain. *Merriam–Webster's Collegiate Dictionary* 799 (10th ed.1999).

The parties stipulated that petitioner was a felon.

On the armed robbery charge, the trial judge submitted to the jury verdicts of armed robbery and of the lesser included offense of simple robbery. With respect to the armed robbery charge, the court instructed the jury that: "This element [that the defendant used or threatened to use a dangerous weapon] does not require that the defendant actually display or possess a dangerous weapon. It is sufficient if the victim reasonably believed the defendant had a dangerous weapon at the time of the threat." (*Id.* at 108.)

The jury convicted petitioner of armed robbery and acquitted him of being a felon in possession of a firearm.

Petitioner then moved to set aside the verdict and for a new trial. The court granted the motion, concluding that it should not have given the above-quoted instruction. The court based its conclusion on a comment in the Wisconsin Jury Instructions that the instruction should only be given "if the case involves a threat to use a weapon and no weapon or other article is actually displayed." (*Id.* at 109 (quoting Wis. JI–Criminal 1480 cmt. n.10.)) The court declared that the instruction was proper only

> when the case involves a threat to use a weapon but no weapon is actually present. This is not the case here. Ms. Williams clearly testified that she saw a gun in the defendant's hand at the time of the robbery. The quoted language does broaden the basis upon which the defendant could be convicted of armed robbery.

(*Id.* at 109.)

The court also concluded that the instruction was prejudicial noting that, because the jury had acquitted petitioner of possessing a firearm, it must have based its guilty verdict on the armed robbery charge on the improper instruction:

The jury found the defendant not guilty of being a felon in possession of a firearm. To find the defendant guilty of armed robbery the jury must have relied upon the quoted language from the instruction as a basis for the armed robbery. This language provides the jury with a basis to reach seemingly inconsistent verdicts. But there is no proof in the record to support giving the quoted language. Ms. Williams saw the gun. The quoted language allowed the jury room to find guilt on a basis not supported by the record. The inconsistency can only be explained by the use of the quoted language from the jury instruction. Quite possibly the jury would have found the defendant guilty of armed robbery or unarmed robbery. But that is speculation. Any confidence in the outcome of this trial has been undermined.

(*Id.*)

The state did not appeal the trial court's decision setting aside petitioner's conviction.

Petitioner then moved to dismiss the armed robbery charge, arguing that the Double Jeopardy Clause barred a retrial. The trial court denied the motion, stating that:

> there was evidence sufficient in the record to sustain a verdict as it was entered . . . . Jennifer Williams testified that she saw the defendant with the gun and Mr. Blodgett testified that he saw a person run out of the building and drop something that he thought were nunchakus, which would be considered a dangerous weapon.

(Answer Ex. F App. at 37–38.)

The state court of appeals denied petitioner permission to appeal, stating that:

> Even if the jury concluded that Losey did not possess a firearm, as testified to by the restaurant employee, it could

have found him guilty of armed robbery based on the other witness's testimony that Losey dropped a martial arts implement as he left the scene. The implement consisted of two metal bars connected with a chain, and was a "dangerous weapon" under any reasonable view. Consequently, the trial court did not set aside the verdict because the jury heard insufficient evidence to convict. Instead, it set aside the verdict because the jury may have convicted on a theory neither advanced nor proven by the State, due to an error in instructions.

(Answer Ex. E at 1).

Petitioner unsuccessfully sought review in the state supreme court.

## II. JURISDICTION AND HABEAS STANDARD OF REVIEW

 Generally, federal courts must abstain from interfering with pending state criminal proceedings. *Younger v. Harris,* 401 U.S. 37, 43–45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). However, a claim that a state prosecution will violate the Double Jeopardy Clause is an exception to this rule. *Mannes v. Gillespie,* 967 F.2d 1310, 1312 (9th Cir.1992). Moreover, states may waive their right to *Younger* abstention. *Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 480, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). In the present case, respondent does not object to my addressing the merits of petitioner's claim.

Under § 2241(c)(3), I may grant the writ if petitioner is being held "in violation of the Constitution ... of the United States."

## III. DOUBLE JEOPARDY ANALYSIS

### A. General Principles

 The Double Jeopardy Clause of the Fifth Amendment provides that a person shall not "be twice put in jeopardy" for the same offense. U.S. Const. Amend. V. The protection against double jeopardy is enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 796, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The clause affords a defendant three basic protections: (1) protection against successive prosecution for the same offense after acquittal; (2) protection against successive prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled in part on other grounds by Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

The protection against double jeopardy serves a number of interests, probably the most important of which is finality. George C. Thomas III, *An Elegant Theory of Double Jeopardy,* U. III. L.Rev. 827, 829 (1988). Finality is important in the criminal process because it protects defendants from having to suffer prolonged anxiety and insecurity caused by the pendency of criminal charges, and because it reduces the likelihood that innocent defendants may be found guilty. *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The finality of a verdict prevents the state from "honing its trial strategies and perfecting its evidence through successive attempts at conviction. Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance." *Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The principle of finality protects a defendant from being subjected to the rigors of a second trial simply to "afford[ ] the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

■ Under double jeopardy principles, an unreversed verdict results in finality. This is so because a verdict constitutes a determination of a defendant's culpability. Thus, acquittals are an absolute bar to appeal or to a new trial, and unreversed convictions are an absolute bar to a new trial. Further, some judicial events other than verdicts determine culpability and, therefore, are considered equivalent to verdicts for double jeopardy purposes. Such events include convictions reversed because of legally insufficient evidence. Thomas, *supra*, at 850.

■ Thus, when determining whether a decision setting aside or reversing a conviction bars a retrial, a court must decide whether the decision was equivalent to a verdict and, therefore, is to be treated as final. To make this determination, the court must inquire into the reason that the conviction was overturned. If, having had a full, fair and complete opportunity to prove the defendant guilty, the prosecution failed to present sufficient evidence to obtain a conviction, the decision overturning the conviction will be treated as equivalent to a verdict of acquittal and accorded the same finality as an acquittal. *See Burks*, 437 U.S. at 16, 98 S.Ct. 2141 ("[T]he prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble."); *see also Hudson v. Louisiana*, 450 U.S. 40, 43–45, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).

However, if the prosecution did not have a full, fair and complete opportunity to establish the defendant's culpability because the conviction was set aside as the result of a trial error, such as the trial court's erroneous exclusion or admission of evidence or erroneous instruction to the jury, the decision will not be treated as equivalent to a verdict of acquittal and re-prosecution of the defendant will not be barred. *United States v. Tateo*, 377 U.S. 463, 465, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

> Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

*Id.* at 466, 84 S.Ct. 1587.

■ Thus, in order to determine whether petitioner may be retried, I ask whether the decision setting his conviction aside was the functional equivalent of an acquittal. *Piaskowski v. Bett*, 256 F.3d 687, 694 (7th Cir.2001). If the conviction was set aside because the state failed to prove its case, the decision will be treated as equivalent to a verdict, and the defendant may not be retried. On the other hand, if the conviction was set aside because of a trial error and not a failure of proof, the Double Jeopardy Clause will not bar re-prosecution. In determining the reason that the conviction was set aside, I am not bound by the court's characterization of its own decision. *United States v. Scott*, 437 U.S. 82, 96, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). Neither, however, should I ignore the court's order. *Sanabria v. United States*, 437 U.S. 54, 66, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

## B. Re–Prosecution for Armed Robbery

In the present case, the trial court set aside petitioner's armed robbery conviction because it drew certain inferences from the jury's verdict of acquittal on the felon in possession of a firearm charge. The court considered the verdict to be a determination that petitioner did not have a gun and therefore concluded that the evidence was insufficient to support a conviction of armed robbery based on petitioner's use of a gun The court further inferred that the jury must have convicted petitioner based on the theory of guilt specified in the improper instruction, i.e., that he had threatened to use but not actually possessed a gun, a theory for which there was no evidentiary support. It is clear that the court drew these inferences and set aside the verdict based on them from its statement that "the jury found the defendant not guilty of being ... in possession of a firearm ...[therefore it] must have relied upon the quoted language from the instruction as a basis for [convicting him of] the armed robbery." (Answer Ex. C App. at 101.)

■■■ Thus, insofar as the armed robbery conviction was based on petitioner's being armed with a gun, the court set it aside because of a failure of proof. Respondent acknowledges that the state cannot re-prosecute petitioner for armed robbery based on the theory that he was armed with a gun. And, in fact, such prosecution would be barred by that part of the Double Jeopardy Clause known as criminal collateral estoppel. *See Ashe v. Swenson,* 397 U.S. 436, 445–46, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The doctrine of criminal collateral estoppel prohibits the state from re-litigating any ultimate fact resolved in a defendant's favor by a prior acquittal. *Id.* In the present case, the jury found that petitioner did not possess a gun, thus, that issue may not be relitigated.

■■■ However, respondent argues that the state may retry petitioner for armed robbery based on other theories as, for example, that he was armed with nunchakus or that he displayed his hand so as to cause the cashier to believe that he was armed. I disagree and conclude that the Double Jeopardy Clause bars the state from re-prosecuting petitioner for armed robbery on any theory. I reach this conclusion primarily because of the manner in which the state chose to charge petitioner. Under Wisconsin law, armed robbery is robbery "by use or threat of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon." Wis. Stat. § 943.32(2). Thus, the statute permits the state to prove armed robbery in a number of ways. However, in the present case, the state alleged in the information that petitioner committed robbery "while armed with a dangerous weapon, to wit, an automatic handgun." (Answer Ex. C App. at 101.) By specifically alleging that petitioner was armed with a handgun, the state made being armed with a handgun an element of the charge. This is so because the legal effect of the words, "to wit," is to make what follows an essential element of the offense. *United States v. Leichtnam,* 948 F.2d 370, 377–78 (7th Cir. 1991); *see also United States v. Willoughby,* 27 F.3d 263, 266 (7th Cir.1994) ("'To wit' is an expression of limitation which, as our cases indicate, makes what follows an essential part of the charged offense.").

Having made being armed with a handgun an element of the offense, the state had to prove the armed robbery charge by showing that petitioner was armed with a handgun. The state could not have convicted petitioner of armed robbery by proving at trial that he possessed nunchakus or that he used his hand to simulate a gun without improperly constructively amending the information. *See Stirone v.*

*United States,* 361 U.S. 212, 217–18, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). In *Leichtnam,* the Seventh Circuit held that a charge was improperly amended where the government charged use and possession of a firearm, "to wit a Mossberg rifle," but at trial adduced proof of the Mossberg rifle along with two other weapons. The court found that the government's proof impermissibly broadened the indictment and violated the defendant's rights. 948 F.2d at 379–81. Similarly, in *Willoughby,* the Seventh Circuit held that it was improper for the government to charge the defendant with using and carrying a firearm in relation to a drug trafficking crime, "to wit: the distribution of cocaine," and then prove that he used or carried the weapon in connection with the offense of possession with intent to distribute.[3] 27 F.3d at 266–67.

Thus, the state made being armed with a gun an element of the offense of armed robbery, and it failed to prove that petitioner was armed with a gun. The state's evidence on the armed robbery charge was, therefore, legally insufficient because the state failed to prove an element of the offense, i.e., that petitioner was armed. As a result, the trial court's decision setting aside the armed robbery conviction was the equivalent of a verdict of acquittal on that charge. Thus, the decision is deserving of the finality accorded to verdicts of acquittal, and re-prosecution of petitioner for armed robbery is barred. The state

had a full, fair and complete opportunity to prove petitioner guilty but failed to adduce sufficient evidence to do so. *See Burks,* 437 U.S. at 16–17, 98 S.Ct. 2141; *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). The state was not compelled to charge petitioner in a manner that required it to prove that he was armed with a gun, nor did the erroneous jury instruction prevent it from proving such element. To permit a retrial on the armed robbery charge would give the state a "second bite at the apple," *Burks,* 437 U.S. at 17, 98 S.Ct. 2141, i.e., an unjustified opportunity to correct the deficiencies in proof revealed at the first trial.[4]

Thus, the state may not retry petitioner for armed robbery. The principle that verdicts and verdict equivalents are final protects petitioner from being subjected to the rigors of a second trial simply to afford "the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks,* 437 U.S. at 11, 98 S.Ct. 2141.

The Seventh Circuit's decisions in *United States v. Lanzotti,* 90 F.3d 1217 (1996), and *United States v. Tranowski,* 702 F.2d 668 (7th Cir.1983), permitting retrials do not require a different result. In *Lanzotti,* the trial court failed to instruct the jury on a theory of guilt that the government charged and proved; thus, the government did not have a full, fair and complete op-

**3.** Although *Leichtnam* and *Willoughby* were decided under the Fifth Amendment's Grand Jury Clause, there is no reason to conclude that the meaning assigned to the words, "to wit," should be any different in a case decided under the Fifth Amendment's Double Jeopardy Clause.

**4.** Although I need not decide the issue, it is at least arguable that even if the state had not specified in the information that petitioner was armed with a gun, the evidence adduced at trial was insufficient to support an armed

robbery conviction based on the use of nunchakus or on the simulation of a weapon. The only mention of nunchakus was witness Blodgett's statement that the man who ran out of the restaurant dropped and picked up a tubular-type object that he thought "was a set of nunchakus." (Answer Ex. G. at 102.) Even assuming that the object was a set of nunchakus, there was no testimony that it was used in the robbery. Further, there was no testimony that petitioner simulated a weapon.

portunity to convict defendants, and the trial court's decision setting aside the verdict was not equivalent to an acquittal. 90 F.3d at 1223. In *Tranowski*, the court held that a retrial was not barred after a reversal on appeal for the erroneous admission of evidence where the remaining evidence was insufficient to support the conviction. 702 F.2d at 671. There, too, the government was not afforded a full, fair and complete opportunity to convict because it did not know when it presented its case that some of its evidence would subsequently be excluded.

In *United States v. Holzer*, 840 F.2d 1343, 1349 (7th Cir.1988), the Seventh Circuit left open the question whether a defendant who was prosecuted under what turned out (because of a subsequent Supreme Court decision) to be a non-existent theory of criminal liability could be retried under a proper theory, which was not charged or proved at trial. Whatever the correct result would have been in *Holzer*, the present case is a stronger one for application of the double jeopardy bar because the reason for the state's failure of proof was its own charging decision rather than a supervening Supreme Court decision.

## C. Re–Prosecution for Simple Robbery

 It does not necessarily follow, however, from the conclusion that the decision setting aside petitioner's armed robbery conviction was equivalent to an acquittal that the state is barred from reprosecuting petitioner on the lesser included charge of simple robbery. The verdict of guilty demonstrated that the jury found the existence of every element of the lesser-included offense of simple robbery. Further, the trial court's decision setting aside the verdict made clear that the state's evidence was insufficient only with respect to whether petitioner was armed. Under such circumstances, the reviewing

court may remand the case for entry of judgment of conviction on the lesser offense or allow retrial. Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 25.4(b) (2d ed.1999).

In *Rutledge v. United States*, 517 U.S. 292, 306, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), the Supreme Court approved of the practice of appellate courts directing the entry of judgment for a lesser-included offense after reversing a conviction for a greater offense on grounds that affected only the greater offense. The Seventh Circuit has also held, in a habeas case, that the Double Jeopardy Clause does not bar such practice by state courts. *Dickenson v. Israel*, 644 F.2d 308, 309 (7th Cir.1981), *aff'g* 482 F.Supp. 1223 (E.D.Wis.1980) (adopting decision of district court as opinion of the court of appeals). The facts of *Dickenson* are virtually identical to those of the present case. There, the defendant was charged with armed robbery of a restaurant, but the cashier could not positively identify the object in petitioner's waistband as a gun. The jury was instructed on the elements of armed robbery and of the lesser-included offense of robbery, and it convicted petitioner of the greater offense. On appeal, the state supreme court held that the evidence was insufficient to prove that the defendant was armed and remanded the case for entry of judgment of conviction on the lesser-included offense. 482 F.Supp. at 1224–25.

The defendant petitioned for a writ of habeas corpus and argued under *Burks* that the state supreme court's directive exposed him to successive prosecution for the same criminal conduct in violation of the Double Jeopardy Clause. The court rejected his claim, stating:

> In petitioner's case, however, if the trial court had been correct in the first instance and ruled that there was insufficient evidence for the jury to find that

petitioner was armed at the time of the robbery, there would have been no directed verdict of acquittal. Instead, the jury would have been instructed only on the charge of simple robbery. As indicated by its verdict on the actual charge of armed robbery, the jury found the existence of every element of the lesser-included offense as well. Accordingly, when the Wisconsin Supreme Court corrected the trial court's error and ordered that judgment be entered on the robbery charge, it placed petitioner in precisely the same position that he would have been in had the error never occurred. *Burks* does not require more than that.

*Id.* at 1226.

Thus, the Double Jeopardy Clause neither bars the entry of a judgment of conviction against petitioner on the lesser-included charge of simple robbery or reprosecution of him for simple robbery. *See Beverly v. Jones,* 854 F.2d 412, 415–16 (11th Cir.1988) ("It is difficult to imagine, therefore, how Beverly's second chance at acquittal could be constitutionally infirm when a remand for sentencing would not have been.").

In the present case, the state courts ordered that petitioner be retried for armed robbery, and petitioner asks that the charges be dismissed entirely. For the reasons have stated, neither of these remedies is appropriate. I am uncertain whether, sitting as a habeas court, I would have the power to order the entry of judgment of conviction of the lesser charge of simple robbery. In any event, that state has not asked me to do so, and I believe that it is preferable to order that petitioner be retried. *See* William S. McAninch, *Unfolding the Law of Double Jeopardy,* 44 S.C. L.Rev. 411, 445–46 (1993) ("Certainly the original jury must have found that every element of the lesser offense existed in order to convict of the greater. Yet, it

does not necessarily follow that the jury would have convicted for the lesser offense had it been presented with only the lesser charge. Consequently, the better practice is to reverse the conviction for the greater offense and remand for retrial on the lesser included offense.").

## IV. CONCLUSION

For the foregoing reasons, I conclude that the state may retry petitioner for simple robbery without offending the Double Jeopardy Clause and, therefore, order that the petition for a writ of habeas corpus be **DENIED**. The state may proceed as indicated in this decision.