**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerome R. STEELE, Defendant–Appellant.**

**No. 03–1263.**

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 4, 2003.*

Decided Nov. 10, 2003.

Timothy M. Morrison, Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

James C. McKinley, Indiana Federal Community Defenders, Inc., Indianapolis, IN, for Defendant–Appellant.

* The parties waived oral argument in this case; therefore the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(f).

Before BAUER, COFFEY, and KANNE, Circuit Judges.

## ORDER

In January 2003 Jerome Steele was convicted after a bench trial of one count of possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), and three counts of aiding and abetting the making of false statements to acquire firearms, 18 U.S.C. §§ 922(a)(6), 2. He contends on appeal that the district court erred in denying his pretrial motion to suppress his confession, that his possession conviction must be reversed because the government's proof at trial constructively amended the indictment, and that the government presented insufficient evidence to support the three false statements convictions. We affirm.

In May 2002 Latisha White, James Hill, and Stephanie Parman all bought firearms from Don's Guns in Indianapolis, Indiana, with money provided by Steele. All three "straw purchasers" filled out an ATF form misrepresenting that they were the actual purchasers of the weapons. All three turned the guns over to Steele after the purchases. Steele accompanied White into Don's Guns two times, provided her with money, and selected a total of nine firearms for her to buy. Hill also made two purchases for Steele. The first time, Steele accompanied Hill to the store, provided the money, and told him which guns to buy. The store would not release the guns that day, so the two returned the next day to pick them up. Hill went by himself the second time but he used money provided by Steele and followed Steele's directions to select six guns that cost $160 each. Approval was again delayed. Hill and Steele returned several days later to pick up the six guns, and they brought Parman along to make a purchase. At Steele's direction and with Steele's money, Parman went into the store with Hill and bought six guns. Hill and Parman left the store with twelve guns and met Steele, who was waiting across the street in Hill's pickup truck. Hill drove them to a residential neighborhood and parked in front of a house. Steele went into the house and retrieved two duffel bags. He had filled one bag with guns and placed it in the truck bed when ATF agents and Indianapolis police officers arrived and arrested him, Parman, and Hill.

Detective Paul Arkins recited the *Miranda* warnings, and Steele responded that he understood and waived his rights. Arkins then talked to Steele for approximately ten minutes, but Steele denied any knowledge about the guns. Steele was placed in a police car where he waited for approximately three hours while officers searched the house where Steele had gotten the duffel bags. Special Agent Eric Jensen then took Steele to a police station where he was allowed to smoke, use the restroom, buy a soft drink, and–at some point–call his mother and girlfriend. Arkins and Jensen interviewed Steele at the station. They told him he could receive a ten-year prison sentence and that the prosecutor might consider any cooperation he offered, but they made no specific promises in exchange for his cooperation. Steele signed a written waiver of his rights and provided a tape-recorded confession.

Steele pleaded not guilty and moved to suppress his confession on the ground that he did not knowingly and voluntarily waive his rights to remain silent and consult with an attorney. The court held a hearing at which Steele testified that he told the officers several times that he did not want to talk to them; he also said that at the police station, before confessing, he had asked for an attorney. Steele said he confessed in exchange for the opportunity to call his mother and girlfriend. In contrast, Arkins testified that Steele

had already called his mother and girl-friend before confessing and both Arkins and Jensen said that Steele never asked to stop the interrogation or consult with an attorney. The court found Steele's testimony that he confessed in exchange for phone calls not credible. The court further discredited his testimony that he invoked either his right to remain silent or consult with an attorney. The court also found that Steele was not tricked and that he was calm, in good physical condition, and not under the influence of drugs or alcohol when he waived his rights at the time of his arrest and again later at the station. The motion to suppress was denied.

■ On appeal Steele first contends that the court erred in denying his motion to suppress because he "was persistently coaxed and pressured into waiving his rights, thereby rendering the waiver and ultimate confession involuntary." He reasserts that he invoked his rights to remain silent and consult with an attorney and that the officers pressed forward with their interrogation nonetheless. When reviewing a court's ruling on a motion to suppress, we will not disturb factual findings unless they are clearly erroneous. *United States v. Jackson*, 300 F.3d 740, 747–48 (7th Cir.2002). After hearing testimony and observing the witnesses, the district court discredited Steele's testimony that he had asked for counsel or requested the officers to stop the interrogation. The court also discredited his testimony that the only reason he confessed was to obtain use of the telephone. We cannot say that we are left with the "definite and firm conviction" that the district court made a mistake in its factual findings, so our de novo consideration of whether Steele's waiver was voluntary accepts those facts as true. *See id.*

In considering whether a waiver of *Miranda* rights was voluntary, courts typically consider, among other factors, the defendant's background, his mental and physical condition, and the duration and conditions of detention. Aside from his discredited assertions that the officers ignored his requests to consult counsel and remain silent, the only other factor Steele highlights to suggest that his waiver was involuntary is that he had to wait in the police car for approximately three hours while the police searched the house. We fail to see, however, why sitting in the car without any further interaction with the authorities during that time could have made his later decision to waive counsel and talk to the officers involuntary. After that time, moreover, Steele was brought to the station, allowed to buy a soft drink, given access to a phone to call his mother and girlfriend, and allowed to use the restroom. Looking at the totality of the circumstances, *see United States v. Smith*, 218 F.3d 777, 781 (7th Cir.2000), we cannot say that Steele's waiver of his rights was involuntary. *Cf. United States v. Doe*, 149 F.3d 634, 639 (7th Cir.1998) (two hours of questioning handcuffed in the back of a police car in a remote location not sufficient to find waiver involuntary).

■ Steele next contends that his § 922(g)(1) conviction should be reversed because the government's proof at trial impermissibly amended the indictment. The indictment charged that before possessing a gun Steele had been "convicted of a crime punishable for a term exceeding one (1) year, to wit: [he] was convicted on or about January, 2002 of the felony offense of possession of a controlled substance with intent to deliver under cause number 2001 CR–1581501 in Cook County, Illinois Criminal Courts and sentenced to 24 months probation." At trial, the government offered evidence of a January

2002 Illinois conviction out of Cook County having this particular cause number, but the proof showed that the crime was felony possession of a controlled substance, not possession with intent to deliver. At the close of the government's case, Steele argued that the government had presented insufficient proof that he had the prior felony conviction alleged in the indictment and that a conviction based on proof of a different prior felony would cause an impermissible constructive amendment of the indictment. The district court concluded that such an error should be analyzed as a variance, which would require acquittal only if Steele had been misled or confused, which he could not have been given that the conviction was accurately identified by jurisdiction, court, cause number, date, and sentence.

On appeal Steele presses the argument that his indictment was constructively amended and argues that this case is squarely governed by *United States v. Willoughby*, 27 F.3d 263 (7th Cir.1994). In *Willoughby* the defendant was charged with distributing cocaine, possessing cocaine with intent to distribute, and using or carrying a gun during the distribution offense. At trial, instead of proving that the defendant had used or carried a gun during the distribution, the government proved instead that he used or carried it in connection with the possession offense, and the jury instructions allowed conviction on that theory. The two drug crimes were quite distinct in terms of the defendant's conduct–the distribution charge was based on several drug sales while the possession charge was based on his control over a storage locker containing the gun along with scales, plastic baggies, and 164 grams of cocaine, some of it divided and packaged in small baggies. We reversed, holding that the indictment had been constructively amended because the allegation that the defendant used or carried a gun in connec-tion with the distribution offense was significantly different from the allegation that the gun was sitting in a storage locker with drugs and paraphernalia. *See id.* at 267. The defendant's planned defense to one charge would not likely match a defense to the other.

But whatever similarity Steele sees between his appeal and *Willoughby* is illusory because the two cases do not present the same legal issue. Here, in distinct contrast to *Willoughby* and other cases reversing convictions based on constructive amendments, *see United States v. Leichtnam*, 948 F.2d 370, 379 (7th Cir. 1991) (indictment alleged possession of rifle but jury instructions permitted conviction based upon evidence of that gun or two other handguns); *United States v. Pigee*, 197 F.3d 879, 887 (7th Cir.1999) (indictment alleged that defendant made building available for storing drugs, but jury instructions permitted conviction based on evidence that defendant had allowed building to be used for manufacturing, distributing, or using drugs in addition to storage), the government did not flip-flop between two theories but rather relied on one consistent theory for proving that Steele was a felon–that Steele had a January 2002 felony drug conviction, cause number, 2001CR–1581501, from the Cook County Circuit Court. One single prior felony, albeit mislabeled as possession with intent to deliver rather than simple possession, was charged in the indictment and then proven at trial. Only if the mislabeling had confused Steele or misled him would reversal be warranted. *United States v. Jungles*, 903 F.2d 468, 476 (7th Cir.1990) (conviction upheld when indictment charged defendant with causing employer to perform acts in furtherance of tax evasion but proof revealed defendant was not an employee but an independent contractor); *United States v. Skelley*, 501

F.2d 447, 452–53 (7th Cir.1974) (conviction for unlawful possession of counterfeit notes upheld despite typographical errors listing serial numbers of bills in indictment); *United States v. Denny,* 165 F.2d 668, 670 (7th Cir.1948) (conviction upheld despite typographical error in defendant's name in the indictment); *Unites States v. Kegler,* 724 F.2d 190, 193–94 (D.C.Cir.1983) (conviction for interstate transportation of forged securities upheld despite typographical error in payee name in indictment). Not only did Steele's counsel admit to the district court that the mistake did not mislead Steele in preparing his defense, the court also made a factual finding that Steele was not misled by the error. We thus find that the misnomer was harmless. And to the extent that Steele is arguing that the government presented insufficient evidence that he had a prior felony conviction, we note that the government presented a certified copy of the Illinois conviction.

■ Finally, Steele argues that the government failed to prove beyond a reasonable doubt that he aided or abetted White, Hill, or Parman in making false statements. We review challenges to the sufficiency of the evidence in the light most favorable to the government and will uphold the conviction if any rational trier of fact could have found the essential elements beyond a reasonable doubt. *United States v. Hunt,* 272 F.3d 488, 493 (7th Cir.2001). Conviction on an aiding-and-abetting theory requires proof that the defendant knew of the crime, desired it to succeed, and committed some act of affirmative assistance. *Id.* Steele challenges only the first and third elements.

Steele contends that the government presented insufficient evidence that he knew White, Hill, or Parman would have to make false statements on the ATF form in order to purchase the guns. He points out that there is no evidence that he ever completed the ATF form himself and that it is not clear whether White, Hill, and Parman realized that they were lying on the form. But an aider or abettor need not know every precise detail of the criminal plan. *United States v. Beck,* 615 F.2d 441, 453 (7th Cir.1980). Here, Steele knew that he could not purchase the weapons himself. He also demonstrated knowledge of gun purchase procedures when he asked White whether she had ever been in trouble and told her that she would need two pieces of identification. In addition, he was actually present in the store when White filled out the form representing herself as the actual purchaser. Finally, when asked at the end of his confession if he wanted to add anything, Steele said "I would like to add that I know what I was doing was wrong and, it don't, it don't, it don't take no rocket science to see what I was doing was wrong." We think a rational trier of fact could have a concluded that Steele knew that the three purchasers would have to make false statements. And Steele's contention that he did not provide any affirmative assistance to the making of false statements is frivolous. He recruited and compensated his cohorts, instructed them to buy particular guns, and paid for the guns. Certainly a rational trier of fact could conclude that he provided some assistance to their acts of making false statements.

Accordingly, we AFFIRM Steele's conviction.