In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1417

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHELIA SWAN,

*Defendant-Appellant.*

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division
No. 03 CR 926—**Amy J. St. Eve**, *Judge.*

ARGUED NOVEMBER 29, 2006—DECIDED MAY 8, 2007

Before BAUER, CUDAHY, and ROVNER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* The defendant, Shelia Swan, was convicted by a jury of mail fraud and sentenced to 22 months of imprisonment. She appeals her conviction, claiming that the district court erred in admitting an attorney's statement as an admission by a party and in limiting the testimony of a witness. The defendant also argues that the district court erred in denying her motion for judgment of acquittal and motion for a new trial. We affirm her conviction and the denial of her motion for a new trial.

## I. Background

On September 25, 2003, a federal grand jury returned an indictment against the defendant and her husband and co-defendant, Seutter Swan, charging Shelia with two counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of obstruction of justice in violation of 18 U.S.C. § 1505.[1] The latter charge was later dismissed. The indictment alleged that Shelia and her husband were participants in a scheme to defraud Medicare by submitting fraudulent claims for reimbursement. The government's theory was that the Swans sought reimbursement for compensation allegedly paid to three family members, Bettie Starling, Veronica Alexander and Cedric Alexander, who did little or no work for A-1 Home Health Care ("A-1"), the business wholly owned by Shelia and her husband. The government further charged that when federal agents began to investigate the Swans, Shelia attempted to cover up the fraud.

The government presented evidence at trial that A-1 submitted cost reports to Medicare seeking reimbursement of $32,885 in 1996 and $14,160 in 1998 for wages paid to Bettie Starling, Shelia's aunt. Starling testified that she had never worked for A-1. She also testified that Shelia sent her the checks and told her that the checks were to pay off a loan to Greentree Financial to purchase a mobile home in Benton, Mississippi for the defendant's parents. The address listed for Starling on the W-2 form was a Chicago address with which Starling was not familiar. In 1998, Starling testified that she was under financial strain and asked Shelia for a loan. Shelia again put Starling on A-1's payroll and sent her checks. In an

---

[1] Since we will also be referring to the defendant's husband and co-defendant, Seutter Swan, throughout the opinion, we will refer to both the defendant and her husband by their first names to avoid any confusion.

interview with FBI agents in the summer of 2000, Starling said the defendant had told her to say that she was an employee of A-1. Later in 2000, the Swans sent Starling a job description dated November 29, 1995 through the mail. It listed five different duties performed by Starling, none of which she testified she performed.

A-1 also sought reimbursement from Medicare in 1996 for $42,600 in wages paid to Veronica Alexander, Seutter's sister. A-1 provided a job description to a Medicare auditor reporting that Veronica Alexander was the "Quality Management Coordinator" for A-1 in 1996. Testimony at trial suggested that other A-1 employees and consultants performed the responsibilities listed in the job description for this position. Veronica Alexander's ex-husband also testified that she only worked for A-1 for one week while on spring break during college.

In 1997, A-1 sought reimbursement from Medicare for $18,880 in wages paid to Cedric Alexander, Seutter's half-brother. Cedric Alexander's wife testified that he lived in Mississippi until their separation in August 1997 and that he had never worked at A-1 while they were together. Checks issued to Cedric Alexander listed an address in Richton Park, Illinois, where an employee of A-1 lived in 1997.

Relevant to this appeal, the government called FBI Agent Mike Miller to testify about his investigation into A-1. As to the investigation of Veronica Alexander's wages, Agent Miller testified that he sent a subpoena to A-1's lawyer at the time (the James Montgomery Group) seeking documents relating to the qualified management coordinator position. Agent Miller testified that he received a call from an attorney, Tom Marszewski, in response to the subpoena. Agent Miller further testified that Marszweski informed him that the defendants "used the [quality management coordinator] description submitted to

Medicare so that they could be reimbursed at a higher rate per that job description." (R. 75-3 at 353.) Both Shelia's attorney, Charles Shepherd, and her husband's attorney, Adam Bourgeois, objected on hearsay grounds to the admissibility of Agent Miller's testimony.[2] The district court allowed the testimony as an admission of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(D).

Shelia filed a post-trial motion for a mistrial on October 27, 2005 based on the admission of Agent Miller's testimony. The district court denied the motion the same day. An affidavit prepared by Attorney Marszewski was submitted in support of a subsequent motion for a new trial or judgment of acquittal. In the affidavit, Marszewski denied making the statements attributed to him by Agent Miller: "I did not tell either Agent Miller or prosecutor Porter that A-1 used the job description to get reimbursed at a higher hourly rate of pay for Veronica Alexander." (Appellant's Br., App. F at ¶ 3.) Marszewski also stated that he has not "at any time represented Seutter or Shelia Swan with respect to the federal criminal prosecution" and that he was "only involved with the investigation for the very limited purpose of responding to the grand jury subpoena." (*Id.* at ¶ ¶ 5, 6.) He stated that he "had no authority to act for Seutter or Shelia Swan in any other capacity." (*Id.* at ¶ 7.) Lastly, Marszewski stated that he "never considered myself—factually or legally—to be the agent of either Seutter or Shelia Swan." (*Id.* at ¶ 8.)

Also relevant for the purposes of this appeal is the testimony of Attorney Charles MacKelvie. During the trial,

---

[2] Attorney Bourgeois is representing the defendant Shelia Swan on appeal. At trial, he represented only her husband, Seutter Swan. Shelia was represented by Attorney Shepherd at trial.

Shelia and Seutter filed a joint motion in limine to admit the expert testimony of Attorney MacKelvie. The memorandum in support of the motion stated that "[t]he defendant is offering Mr. MacKelvie as an opinion witness either under FRE 701 or FRE 702." (Appellant's Br., App. D at 3.) The memorandum also listed the areas in which Attorney MacKelvie could offer testimony. The district court, however, did not rule on this motion since Attorney Bourgeois, Seutter's attorney, effectively withdrew the motion when he conceded at the hearing on the motion that Attorney MacKelvie would not be providing opinion testimony.

At trial, Attorney Bourgeois attempted to solicit testimony from MacKelvie about his opinion whether the defendant had violated Medicare regulations with respect to the charges for which she was being tried. The prosecutor objected as to foundation, among other grounds, and the district court sustained this objection, thereby limiting Attorney MacKelvie's testimony.

On October 27, 2005, the jury found the defendant guilty of two counts of mail fraud. On November 28, 2005, Shelia and Seutter filed a joint motion for a new trial or for judgment of acquittal. The court denied the motion and sentenced Shelia to 22 months in prison. The defendant appeals her conviction, as well as the denial of her motion for a new trial or for judgment of acquittal.

## II. Discussion

The defendant offers three grounds for reversal. First, she argues that the district court erred in admitting the testimony of Agent Miller concerning Attorney Marszewski's statement as an admission by an agent under Federal Rule of Evidence 801(d)(2)(D). Second, she contends that the district court erred in limiting the

testimony of Attorney MacKelvie. Third, she argues that the district court erred in denying the defendants' joint motion for a new trial or for judgment of acquittal. We address each argument in turn.

## I. Agent Miller's Testimony

Before turning to the substance of Shelia's claim, we must first determine the appropriate standard of review. In order to preserve a ruling on the admission of evidence for appeal, a party must make "a timely objection or motion to strike [which] appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." Fed. R. Evid. 103(a)(1); *see also United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir. 1988). We review the district court's decision to admit evidence for abuse of discretion if the party contesting its admissibility objected to it at trial. *United States v. Sanders*, 979 F.2d 87, 92 (7th Cir. 1992); *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir. 1985). If no objection was made, the standard of review is plain error. *United States v. Jaimes-Jaimes*, 406 F.3d 845, 849 (7th Cir. 2005); *Wynn*, 845 F.2d at 1443.

The defendant argues that we should review the district court's decision to admit the evidence for abuse of discretion. The government counters that plain error should be the standard of review because the defendant's counsel failed to object to the government's question. In order to determine the appropriate standard of review, we must examine the relevant testimony.

Q. [Ms. Noller, Prosecutor] Who is Tom Marszewski?

A. [Agent Miller] He was an associate for the James Montgomery group representing A-1.

Q. So, Mr. Marszewski was also an attorney representing A-1; is that correct?

A. Correct.

Q. Was he also representing [Seutter] Tyrone Swan and Sheila Swan, as far as you know?

A. To the best of my knowledge, yes.

Q. What did he say to you?

> MR. SHEPHERD [attorney for Shelia Swan]: Objection. Hearsay.

> MS. NOLLER: It's an admission of a party opponent.

> THE COURT: Overruled. You may answer.

BY MS. NOLLER:

Q. What did Mr. Marszewski tell you in response to the subpoena?

A. He informed me that there were no documents as described in the subpoena, and that he was aware of where my description came from and that these documents didn't exist.

Q. Did he also tell you why A-1 sent that—or the defendants sent that—description to Medicare?

A. Yes.

> MR. BOURGEOIS [attorney for Seutter Swan]: Objection. Hearsay.

> MS. NOLLER: Admission by a party opponent.

> THE COURT: Overruled.

BY THE WITNESS:

A. Mr. Marszewski informed me that they used the description submitted to Medicare so that they could be reimbursed at a higher rate per that job description.

> MR. BOURGEOIS: Objection. I ask that it be stricken.
>
> THE COURT: On what basis?
>
> MR. BOURGEOIS: Clearly, we have no evidence that either one of these parties said that.
>
> THE COURT: It is an admission through a party opponent through an agent. Overruled.

(R. 75-3 at 352-53.)

The defendant's objection at the time of Agent Miller's testimony was based solely on hearsay grounds. On appeal, the defendant's issue with Agent Miller's testimony concerns whether Attorney Marszewski was an agent of the defendant and the scope of his authority. The hearsay objection offered by Shelia's attorney, Attorney Shepherd, and her husband's attorney, Attorney Bourgeois, does not constitute the "specific ground" on which the defendant now objects. The simple hearsay objection by the defendant failed to put the district court on notice of the precise nature of the defendant's concern. *See Wynn*, 845 F.2d at 1442; *United States v. Laughlin*, 772 F.2d 1382, 1392 (7th Cir. 1985). The district court even acknowledged the difference between the objection made during Agent Miller's testimony and the issue raised in the motion for mistrial and the subsequent motion for new trial or for judgment of acquittal, stating: "That is a different issue than the one you raised and you objected to the testimony on, though. You objected to its admission based on hearsay." (R. 75-4 at 542.) The defendant argues that the "specific ground" was raised in the motion for mistrial and the motion for a new trial, but any "objection" at that time was not timely. In order to preserve an objection for appeal under Federal Rule of Evidence 103(a)(1), "[t]he specific ground for reversal of an evidentiary ruling on appeal must also be the same as that raised at trial." *Wynn*, 845

F.2d at 1442 (citing *United States v. Taylor*, 800 F.2d 1012, 1017 (10th Cir. 1986)).

We conclude that the defendant's hearsay objection to Agent Miller's testimony does not meet the requirements of Federal Rule of Evidence 103(a)(1). Accordingly, we review the district court's decision to admit the testimony of Agent Miller concerning Attorney Marszewski's statement for plain error. Under plain error review, an error must be "clear or obvious" and "affect substantial rights" in order for this court to reverse the district court's decision to admit the evidence. *United States v. Sumner*, 265 F.3d 532, 539 (7th Cir. 2001). Moreover, we should not exercise our discretion to correct the error unless it "seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Kibler*, 279 F.3d 511, 514 (7th Cir. 2001) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (quotation marked omitted).

Now turning to the substance of the defendant's argument, Federal Rule of Evidence 801 provides certain exceptions to the rule against hearsay testimony. "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ." Fed. R. Evid. 801(d). We have previously held that "[a]n attorney *may be* the agent of his client for purposes of Rule 801(d)(2)(D)." *United States v. Harris*, 914 F.2d 927 (7th Cir. 1990) (citing *United States v. McClellan*, 868 F.2d 210, 215 n.9 (7th Cir. 1989)); *see also United States v. Brandon*, 50 F.3d 464, 468 (7th Cir. 1995).

Shelia asserts that Attorney Marszewski was not an agent of the Swans and that he was not acting within the scope of his authority. In questioning Agent Miller, the

government sufficiently established the agency relationship and the scope of that agency in questioning Agent Miller. Agent Miller testified that Attorney Marszewski called him in response to the subpoena; Marszewski identified himself as an associate of the law firm representing A-1 in this investigation; and, to the "best of [Agent Miller's] knowledge," he was representing the defendants. (R. 75-3 at 352.) Relying on this testimony, the district court did not commit plain error in admitting Agent Miller's testimony as an admission of a party by an agent.

Shelia also argues that attorney-client privilege should have been considered in admitting Agent Miller's testimony as to Attorney Marszewski's statement.[3] The defendant contends that there is no evidence that she waived this privilege. But, as the government points out, there is also no evidence that she asserted this privilege at trial. Importantly, the privilege is forfeited if the party fails to make a timely objection at trial. *See United States v. Sanders*, 979 F.2d 87, 92 (7th Cir. 1992).

We have noted that "[t]he unique nature of the attorney-client relationship, however, demands that a trial court exercise caution in admitting statements that are the product of this relationship." *Harris*, 914 F.2d at 931 (citing *United States v. McKeon*, 738 F.2d 26, 30-33 (2d Cir. 1984)). In *Harris*, we followed the Second Circuit in considering certain policy concerns in admitting an attorney's statements under Federal Rule of Evidence 801(d)(2)(D). Namely, we noted that "the routine use of attorney statements against a criminal defendant risks

---

[3] Incidentally, the defendant's attorney-client privilege argument has merit only if Attorney Marszewski was in fact the defendant's agent. Therefore, the privilege argument and the lack of agency argument are mutually exclusive.

impairment of the privilege against self-incrimination, the right to counsel of one's choice and the right to effective assistance of counsel." *Harris*, 914 F.2d at 931 (quoting *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987)) (quotation marks omitted). Although these policy considerations are important, none was implicated in the present case. The defendant was not forced to take the stand because of the admission of the evidence. Attorney Marszewski could have been called as a witness to rebut Agent Miller's testimony. Attorney Marszewski's work on this case was limited to pre-indictment activities; neither he nor any member of his firm represented the defendant at trial, nor is there any allegation made by Shelia that she wanted Attorney Marszewski to represent her at trial. Even if the district court failed to adequately consider attorney-client privilege, this error does not implicate plain error review since the defendant has failed to show any violation of the privilege, and therefore, any effect on her substantial rights.

## II.     *Attorney MacKelvie's Testimony*

Shelia argues that Attorney MacKelvie's testimony as to the complexity of Medicare regulations and other related topics should have been allowed in order to show that the defendant's conduct could have been an innocent mistake. Although Shelia's counsel might have originally planned to call Attorney MacKelvie as an expert witness under Federal Rule of Evidence 701 or as a lay witness offering opinion testimony under Federal Rule of Evidence 702, that motion was effectively withdrawn as is evident from the following exchange with the district court:

> THE COURT: I have the defendant's motion in limine to admit expert testimony.
>
> Mr. Bourgeois, what exactly is it that you want Mr. MacKelvie to testify about?

MR. BOURGEOIS: Well, actually, your Honor, I don't know that it falls into the category of an expert.

. . .

THE COURT: Okay. So your motion is denied as moot. Is it moot?

MR. BOURGEOIS: I'm not suggesting—it may come up later. If it comes up that we need to qualify him for something or other, then I will ask you to reawaken the motion, so to speak.

THE COURT: . . . Are you going to try to elicit opinions from him?

MR. BOURGEOIS: No. No opinions.

THE COURT: Okay.

MR. BOURGEOIS: I don't think.

THE COURT: Because if you are asking him to talk about Medicare regulations—I need more.

MR. BOURGEOIS: I'm not going to ask [him for] opinions, no.

. . .

THE COURT: All right. I do not expect you are going to ask him any expert questions, then.

(R. 75-3 at 390-92.) Moreover, there was no effort on the part of the defendant to introduce Attorney MacKelvie as an expert witness during direct examination or to "reawaken the motion." The defendant certainly forfeited this argument. Regardless, the district court's decision to limit the testimony of Attorney MacKelvie to his first-hand knowledge of this case does not constitute error, plain or otherwise.

*III.  Motion for a New Trial or for Judgment of Acquittal*

Denial of a motion for new trial is reviewed for abuse of discretion. *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989). The court should grant a motion for a new trial only if the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* (quoting *United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985)). In a motion for judgment of acquittal, we ask "whether the record contained sufficient evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt." *United States v. Theodospoulos*, 48 F.3d 1438, 1444 (7th Cir. 1995). "We view the evidence in the light most favorable to the government, recognizing that it is the exclusive function of the jury to determine the credibility of witnesses and draw reasonable inferences." *Id.*

The defendant argues that the evidence fails to establish criminal intent. The crux of the defendant's argument is that payments made to the three family members are not "inherently illegal." The defendant, however, disregards that she and her husband did not simply pay a "salary" to family members, but rather, sought reimbursement from Medicare for those payments. The jury could have reasonably found criminal intent from the defendant's requests for reimbursements from Medicare for "salaries" of close family members who were not employees of A-1. At the very least, the district court did not abuse its discretion in denying the motion.

## III.  Conclusion

For the foregoing reasons we AFFIRM the defendant's conviction and the denial of her motion for a new trial or for judgment of acquittal.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*