In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1438

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DWAYNE HASKINS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:05 CR 86-01—**Rudy Lozano**, *Judge.*

ARGUED JANUARY 3, 2007—DECIDED DECEMBER 26, 2007

Before KANNE, ROVNER, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* A wild night at Dena's Pub, a
local nightclub in Gary, Indiana, ended prematurely
when police arrived on the scene and confiscated drugs
and firearms from Dena's patrons and employees. One
employee was Dwayne Haskins, who worked as a
security guard at Dena's. Police took Haskins' firearm
but later returned it because he lawfully possessed it.
Police also inadvertently gave Haskins a Beretta .40-
caliber pistol. Not one to "look a gift horse in the mouth"
(as he later put it), Haskins accepted the weapon, al-
though it was not his. He later sold the Beretta to Darryl
Eller, his friend and fellow security guard at Dena's.
Unfortunately for Haskins, Eller was not only a con-

victed felon, he was also cooperating with federal agents. Consequently, Haskins was convicted of violating 18 U.S.C. § 922(d), which makes it a crime to sell a firearm to an individual known or reasonably believed to be a felon. Haskins appeals, and we affirm.

**I.**

Haskins became acquainted with Eller in 2000 at Dena's Pub. Both men provided security in some capacity at Dena's. In addition to their security positions at Dena's, both Haskins and Eller worked in various other jobs relating to law enforcement and security. Before resigning after an investigation into his conduct, Eller was employed as a police officer in Gary. Thereafter he worked in the private security industry. In addition to his night job at Dena's, Haskins worked during the day as a hall monitor at Gary Roosevelt High School.

Although Haskins had nothing in his past restricting his possession of firearms, Eller had several felony convictions. As relevant here, Eller was convicted in 1993 of being a felon-in-possession and sentenced to 27 months' imprisonment. This did not deter Eller from again possessing a firearm, an offense for which he was arrested in October 1999. This incident involved him impersonating a police officer by driving a Ford LTD with lights and siren while trailing a fire engine at a high rate of speed. According to Eller, because the circumstances surrounding his arrest were publicized, he told his coworkers at Dena's, including Haskins, about it, including the fact that he had a previous felony conviction.

On March 1, 2003, police arrived to a packed crowd at Dena's and began arresting individuals who possessed drugs and firearms. During the raid, police confiscated firearms from both Eller and Haskins. Specifically, they

arrested Eller as a felon-in-possession and took from him a .40-caliber Beretta, Model 8040 Mini Cougar. Then, instead of taking Eller's Beretta into evidence, police inadvertently returned it to Haskins, in addition to his own firearm that they had previously confiscated.

Eller was taken into custody and admitted to being a felon. He later revealed to police that his firearm had been purchased for him by Dena's head of security, Arthur McClain, and that Haskins had also agreed to purchase a firearm for him. These revelations prompted agents to open investigations into Eller, McClain, and Haskins. Eller agreed to cooperate with the agents in the investigations into Haskins and McClain.

Police wired Eller, who made a number of phone calls to Haskins arranging to buy the weapon. In those calls, Haskins explained to Eller that he would sell him a Beretta Mini Cougar so that he (Haskins) would not have to go to the store for Eller. Their phone conversations culminated with a meeting in front of the high school where Haskins worked, at which time Eller paid Haskins $440 for the gun. After the sale, Eller reported surprisedly to agents that the weapon was the same firearm that police had confiscated from him in the raid on Dena's. Eller continued to work with the authorities after the sale and participated in several more recorded conversations discussing the possibility of Haskins buying him another gun, but it never happened.

After the sale, Haskins met with ATF agent Daniel Mitten. In his interview with Agent Mitten, Haskins admitted to selling the gun to Eller. When Agent Mitten asked Haskins whether he knew Eller was a felon, Haskins responded, "Aaah, yeah." He did, however, go on to say that although he knew Eller had been in some trouble, he did not know the specifics or whether Eller had been imprisoned.

At trial, Eller testified about his conversations with Haskins leading up to and after the sale. He explained that Haskins was aware of his felony conviction. The jury also heard the taped conversations between Haskins and Eller. Additionally, Agent Mitten recounted for the jury his conversation with Haskins where Haskins admitted selling Eller the weapon. The jury convicted Haskins of a single count of violating 18 U.S.C. § 922(d)(1) by selling a firearm knowing or having reasonable cause to believe that Eller was a felon.

## II.

Haskins first argues that his conviction should be reversed because both the government and the district court constructively amended the indictment. Specifically, Haskins maintains that the government was obligated to prove that he knew, not only that Eller had been convicted of a felony, but that it was the particular felony referred to in the indictment. The indictment charged Haskins with selling a firearm to Eller "knowing and having reasonable cause to believe that [Eller] had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: Possession of a Firearm by a Felon in 1993." At trial the government put on evidence that Haskins knew generally that Eller had a felony conviction. It did not, however, prove that Haskins knew specifically about the 1993 conviction. According to Haskins, the phrasing of the indictment obligated the government to prove that he knew about Eller's 1993 conviction. On a related note, he claims that the district court constructively amended the indictment by instructing the jury that he could be convicted based on evidence that he knew Eller had a felony conviction, without reference specifically to the 1993 conviction.

Constructive amendment of an indictment occurs when the government or the district court broadens the possible bases of conviction beyond those specified in the indictment. *See United States v. Murphy*, 406 F.3d 857, 860 (7th Cir. 2005). Such broadening runs afoul of the Grand Jury Clause of the Fifth Amendment, which limits the available grounds for conviction to those specified in the indictment. *Stirone v. United States*, 361 U.S. 212, 217 (1960) ("[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him."); *United States v. Jones*, 418 F.3d 726, 729-30 (7th Cir. 2005).

Haskins relies on this court's decision in *United States v. Willoughby*, 27 F.3d 263 (7th Cir. 1994) for his argument that the wording in his indictment required the government to prove that he knew about Eller's 1993 conviction. In *Willoughby*, we reversed a conviction where the defendant's indictment for using a firearm in relation to a drug trafficking crime specified a particular drug trafficking crime. There the indictment charged the defendant with the use of a firearm "during and in relation to a drug trafficking crime, to wit: the *distribution of cocaine.*" *Id.* at 266 (emphasis in original). At trial, the government proved a connection between the defendant's use of a firearm and the *possession* of cocaine, but not *distribution*, as specified in the indictment. *Id.* at 265. We concluded that by specifying distribution in the indictment, the government had narrowed the possible bases for conviction to the use of a gun connected to distribution. Thus, the cocaine *possession* proven at trial was insufficient. *Id.* at 267.

Haskins maintains that his situation is similar: by specifying Eller's 1993 felony conviction, the government obligated itself to prove at trial Haskins' knowledge of that specific conviction. We disagree. In *Willoughby*, the

phrase "to wit: the distribution of cocaine" followed directly and modified the crime *with which the defendant was charged*: using a firearm in relation to a drug trafficking crime. Here, however, the alleged narrowing language comes on the heels of the description of *Eller's* felony, not the charge against Haskins. Haskins is charged with selling a firearm to Eller "knowing and having reasonable cause to believe that [Eller] had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: Possession of a Firearm by a Felon in 1993." The statute itself requires only that the defendant know the firearm recipient is a felon. In *Willoughby*, however, the statute itself requires proof of a drug trafficking crime, and the indictment there specified a particular drug trafficking crime. Here, however, the phrase "to wit" modifies Eller's felony, not Haskins' *knowledge* of it. The indictment thus provides Haskins notice as to which felony of Eller's the government will rely on when proving that Haskins made the sale knowing that Eller had a conviction. It does not narrow the scope of Haskins' knowledge about Eller's felony conviction. As such, the inclusion of Eller's felony conviction in the indictment is simply "superfluous background information," *United States v. Swanson*, 394 F.3d 520, 525-26 (7th Cir. 2005), that the government need not prove.

Haskins next claims that he is entitled to a new trial based on the district court's failure to instruct the jury as to the meaning of the phrase "reasonable cause to believe" in 18 U.S.C. § 922(d). Section 922(d) prohibits selling a firearm "knowing or having reasonable cause to believe" that the buyer is a felon. Before trial, the government proposed instructing the jury on "reasonable cause to believe" using the Eleventh Circuit's pattern jury instruction, which defines the term as knowledge of facts which "although not amounting to direct knowl-

edge, would cause a reasonable person, knowing the same things, to reasonably conclude that the other person was in fact a convicted felon." But Haskins objected, arguing that the phrase is not defined in the statute or the Seventh Circuit pattern instructions. He also contended in a written objection that the phrase is self-explanatory. Although the district court was initially inclined to give the instruction over Haskins' objection, it ultimately withdrew the instruction.

Based on this chain of events, the government contends that Haskins has waived his argument about the instruction. We agree. Although Haskins claims we can review the issue for plain error, counsel's argument against inclusion of the instruction amounts to waiver. Unlike forfeiture (the failure to timely assert a right), waiver is the intentional abandonment of a known right, and precludes appellate review. *See*, *e.g.*, *United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Charles*, 476 F.3d 492, 495 (7th Cir. 2007). Here Haskins knew he had the right to request the instruction, and instead argued against it. Accordingly, he has waived the issue. *See Repa v. Roadway Exp., Inc.*, 477 F.3d 938, 942 (7th Cir. 2007).

Alternatively, Haskins argued in his opening brief that counsel's decision to argue against defining "reasonable cause to believe" amounts to ineffective assistance of counsel. Because the record for such an argument is not yet developed, however, Haskins wisely disavowed this position at oral argument. *See United States v. Harris*, 394 F.3d 543, 557-58 (7th Cir. 2005) (detailing difficulties attendant ineffective-assistance claims raised on direct appeal and reiterating that "only the most patently egregious of ineffective assistance claims are appropriately brought on direct appeal").

Haskins next contends that his conviction should be reversed because there was insufficient evidence that he

knew Eller had been convicted of a felony. When considering challenges to the sufficiency of the evidence, we consider the evidence in the light most favorable to the government. *E.g.*, *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007). Reversal is appropriate only when the record contains no evidence, however weighed, from which the jury could find the defendant guilty beyond a reasonable doubt. *United States v. Craft*, 484 F.3d 922, 925 (7th Cir. 2007).

Here there are several pieces of evidence from which the jury could have concluded beyond a reasonable doubt that Haskins knew Eller had a felony conviction. First, Eller testified that he told Haskins that he had a felony conviction. Although Haskins argues that Eller's testimony was not credible, that was the jury's call to make. *Swan*, 486 F.3d at 266 ("[I]t is the exclusive function of the jury to determine the credibility of the witnesses and draw reasonable inferences.") (internal quotations and citation omitted); *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (reiterating that appellate court does not second-guess jury's credibility determinations). On top of Eller's testimony is Haskins' comment to the ATF agents that he knew Eller was a felon "the first time I saw him"—yet another piece of evidence from which the jury could conclude that Haskins knew Eller's felony status.

Haskins' conversations with Eller leading up to and during the sale of the gun also provide a basis for the jury to infer that Haskins knew Eller was a felon. On the taped conversations, Haskins tells Eller that he has a gun he is willing to sell him, and also tells him that he (Haskins) will not have to go to the store for Eller. He then tells Eller that he will go get him a gun any time, and that if Eller needs to "throw" the gun he buys from Haskins, he should just "throw that one," and Haskins will get him another. And when they meet for the gun sale,

Haskins again assures Eller that he will buy him a gun any time.

The obvious inference from these conversations is that Haskins knew Eller was ineligible to buy a gun for himself. Particularly in light of Eller's testimony that he told Haskins about his conviction, the jury was entitled to conclude that the felony conviction was the reason Haskins offered to procure a gun on Eller's behalf. In fact, during the sale of the gun, Eller referred to the time when he could "get a pardon and shit," and "be all straight." Haskins discounts this evidence, claiming that Eller did not make this comment until after the transaction was complete, and that Eller could have easily been referring to a misdemeanor conviction. Although the evidence may have supported such an inference, that is apparently not the way the jury viewed it. In light of that and the direct evidence in the form of Eller's testimony that he told Haskins about his conviction, we reject Haskins' challenge to the sufficiency of the evidence.

Haskins next maintains that his conviction should be reversed because the government failed to offer evidence proving that the gun had moved in interstate commerce. Because Haskins failed to make this argument in the district court, we review only for plain error. *United States v. Hendrix*, 482 F.3d 962, 968 (7th Cir. 2007). Haskins argues cursorily that if we conclude that § 922(d) should be interpreted on an "'as-applied' basis with respect to the inquiry of whether the firearm moved in interstate commerce" then his conviction should be reversed for insufficient evidence. Haskins fails, however, to provide any meaningful argument as to why we would interpret § 922(d) in the "as-applied" manner he proposes, and he also stops short of contending that § 922(d) exceeds Congress' authority under the Commerce Clause.

By its terms, § 922(d) contains no requirement that the government prove the firearm moved in interstate com-

merce. Thus, as a statutory matter, there is no basis for the "as-applied" approach Haskins advances. Since there is no statutory requirement, the failure of the government to produce evidence that the gun traveled in commerce would not amount to plain error unless the statute itself exceeds Congress' Commerce Clause authority. But we decline to decide that question because Haskins has not squarely raised the argument. Without deciding the issue, we note that the sale of a firearm is an inherently commercial activity, and thus falls within the third category of activities which Congress is authorized to regulate: "those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (internal citations omitted). Unlike the Gun Free School Zones Act of 1990 struck down by the court in *Lopez*, which regulated the simple act of possession a firearm in a school zone, *see* 18 U.S.C. § 922(q)(1)(A) (1988 ed., Supp. V), § 922(d) regulates the sale of a firearm, which is itself a commercial activity. Congress thus has broad power to regulate because the sale of firearms to felons is plainly economic in nature.

Although this court has not dealt with a challenge to § 922(d)(1) since the Supreme Court invalidated the Gun Free School Zones Act of 1990 in *United States v. Lopez*, both the Eleventh Circuit and the Eighth Circuit have considered the question and concluded that § 922(d)(1) addresses an inherently commercial activity that, even when completed in a completely intrastate transaction, may "'through repetition elsewhere, substantially affect . . . interstate commerce.'" *United States v. Monteleone*, 77 F.3d 1086, 1092 (8th Cir. 1996) (quoting *Lopez*, 514 U.S. at 567); *see also United States v. Peters*, 403 F.3d 1263, 1278 (11th Cir. 2005). Those circuits thus held that because § 922(d)(1) deals with a commercial

activity amenable to the reach of Congress' Commerce Clause power, the statute is constitutional despite its failure to include a requirement that the firearm traveled in interstate commerce. Given Haskins' argument, we need not explicitly join those circuits today. Instead, we refer Haskins to the wording of the statute to reject his claim that the government was obligated to present evidence that the Beretta traveled in interstate commerce. Because the statute contains no such requirement, the government's failure to produce evidence that the gun traveled in commerce does not amount to plain error.

That leaves Haskins' challenge to his sentence, which he contends is unreasonable. In particular, Haskins alleges that the district court failed to properly weigh the sentencing factors in 18 U.S.C. § 3553, and instead relied on improper and irrelevant factors when sentencing Haskins. The district court determined that Haskins had an offense level of fourteen and a criminal history category of I. The district court then sentenced Haskins to eighteen months—the middle of the fifteen to twenty-one-month range that Haskins concedes is appropriate.

A sentence within a properly calculated guideline range is presumed reasonable. *Rita v. United States*, 127 S. Ct. 2456 (2007); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Haskins maintains, however, that the sentencing judge erroneously relied on improper and irrelevant factors when determining his sentence. Haskins first argues that the district court penalized him because he sold the gun to Eller in front of an elementary school. Haskins was originally charged with violating 18 U.S.C. § 922 by possessing a firearm near a school zone, a charge that was later dismissed. But the fact that the charge was dismissed does not erase the facts surrounding the sale. Haskins admitted the facts in the presentence investigation report, which detailed his sale

to Eller while parked in front of Roosevelt High School. As such, Haskins' proximity to the school is a part of the "nature and circumstances of the offense" that the district court is obligated to consider. 18 U.S.C. § 3553(a)(1). That the district court took into account the fact that Haskins sold the gun while parked in front of a school hardly renders the resulting sentence in the middle of the guideline range unreasonable. *Cf. United States v. Howard*, 454 F.3d 700, 703-04 (7th Cir. 2006) (upholding sentence above guideline range based on court's factual finding that defendant caused another's heroin overdose).

Haskins also argues that the district court turned what should have been a mitigating consideration into a reason to increase his sentence. In asking the court to render a lower sentence, Haskins explained that he himself had been shot by a felon fourteen years ago, but the shooter had been acquitted at trial. Haskins now claims that the district court did not give him an adequate opportunity to explain why his status as a victim of crime justified a lower sentence. The district court acknowledged Haskins' experience and concluded that it did not provide grounds to reduce his sentence, pointing out that as a prior victim of a felon with a weapon, Haskins "should have known better" than to sell the firearm to Eller. Haskins complains that the district court erroneously used his status as a victim against him, instead of using it to reduce his sentence, as Haskins urged. That Haskins' attempt to excuse his conduct did not work out as expected hardly amounts to error on the district court's part. The court took the past crime against Haskins into account and deemed it irrelevant to excusing his culpability in the current crime. It was well within the district court's broad sentencing discretion to conclude that Haskins' status as a shooting victim did not mitigate his culpability, and in fact, militated in the other direction.

We are also unconvinced by Haskins' claim that the district court improperly weighed the § 3553(a) factors. Haskins protests that the court did not adequately take into account the fact that he was the primary caretaker for his father, who suffered from colon cancer (and has since died), as well as his grown son, whose mother died shortly after he was born. But the district court *did* consider these circumstances: it noted Haskins' family situation and explicitly stated that it was taking into account the difficulty of raising a child alone. Given the district court's discussion, we are satisfied that the court adequately explained its sentence in light of the § 3553(a) factors. *See United States v. Dale*, 498 F.3d 604, 611-12 (7th Cir. 2007). Although Haskins disagrees with the district court's assessment of the circumstances surrounding the offense and the amount of weight to be given to his family situation, that does not in any way undermine the fact that the court gave "'meaningful consideration to the section 3553(a) factors,'" *id.* at 612 (quoting *United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005)), as required for us to uphold a properly calculated sentence.

## III.

For the foregoing reasons, we AFFIRM Haskins' conviction and sentence.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—12-26-07