NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 11, 2008
Decided June 12, 2008

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-1979

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 05-CR-253-1 |
| PEDRO MARTINEZ, | |
| *Defendant-Appellant*. | James B. Zagel, *Judge*. |

**O R D E R**

Pedro Martinez sold two ounces of methamphetamine to an informant and another pound to an undercover agent. Following a bench trial, Martinez was convicted of two counts of distributing methamphetamine, *see* 21 U.S.C. § 841(a)(1), and sentenced to a total of 151 months' imprisonment followed by 60 months' supervised release. Martinez filed a notice of appeal, but his appointed counsel now moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he is unable to discern a nonfrivolous basis for appeal. Counsel's brief is adequate, and Martinez has responded under Circuit Rule 51(b). We limit our review to the potential issues identified by counsel and Martinez. *United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

**I.**

Martinez defended the illicit sales on the ground that he thought he was working for the Drug Enforcement Administration. On February 9, 2005, a month before the charged distributions, DEA agents Lou Gade and Don Rospond interviewed Martinez because Miguel Ocampo, a known methamphetamine dealer, fingered Martinez as his supplier. Martinez speaks Spanish and the agents do not, so task-force officer Mario Elias participated by phone as an interpreter. Martinez testified at trial that the agents threatened to turn him over to immigration authorities, beat him, or plant drugs on him if he did not assist them. (Gade, Rospond, and Elias denied making those threats.) But Martinez told the agents he wasn't involved in the drug trade and thus could not offer any useful information. He did, however, give the agents contact information for a man they were investigating and pointed out the man's house. The agents never asked Martinez to sign a formal cooperation agreement, nor did they ask him to initiate a drug deal. Gade gave Martinez his phone number before the interview ended, but the agent testified that Martinez never called. (Martinez testified that he tried calling once, but Gade did not pick up.)

About four days after this interview, Martinez purportedly discovered that Sally Quinonez, Ocampo's girlfriend, was cooperating with the DEA. According to Martinez, Quinonez asked him for help in identifying and buying methamphetamine from dealers the DEA would want to target. Martinez understood the plan as follows: he would find a supplier to sell to Quinonez's acquaintance, "Jay"—whom Martinez said he knew was working for the DEA—and the DEA would nab the supplier. Martinez testified that he proceeded with this plan without notifying any DEA agent and despite Quinonez's warning that "Gade"—Ocampo's friend Mike Gade, not DEA agent Lou Gade—was trying to set him up.

Although Martinez insisted that he had never before touched methamphetamine, he was able to deliver two ounces on March 7 and a pound on March 18. Martinez testified that he found a supplier through an associate of Ocampo's known as "El Tigre." El Tigre took Martinez to a bar, where he introduced him to a large-scale dealer known only as "Angel." Martinez recounted that he first bought $20 worth of methamphetamine from Angel, and within a few weeks after that Angel was willing to front the methamphetamine for the two March transactions, which together totaled $13,500. Martinez explained that he provided "references" to earn Angel's trust.

Quinonez, a government witness, denied telling Martinez that she was assisting the DEA. She testified that she told him that she needed to obtain methamphetamine to pay for Ocampo's attorney, and that she had found a buyer named Jay (who was in fact undercover

agent Jay Zbrozck). The government introduced a recording of a phone conversation in which Quinonez asked Martinez for two ounces of methamphetamine and he quoted her a price of "12" per ounce. Martinez did not mention his supplier, Angel—the man he says he was trying to set up—in the phone call. Martinez ended up delivering two ounces to Quinonez in exchange for $2,000. He testified that Angel did not make the delivery because he was suspicious of Zbrozck.

On March 17, Zbrozck telephoned Martinez to order a pound of methamphetamine. During this conversation, which also was recorded, Martinez did not mention Angel, nor did he tell Zbrozck about Angel's suspicions. A first attempt to deliver the drugs failed, but on March 18 Martinez met with Zbrozck and handed him the agreed quantity. At trial Martinez testified that Angel was close by watching the transaction and would have made the delivery himself had there not been a "mix up" between them. But at the time he did not even mention Angel to Zbrozck.

Upon receiving the package, Zbrozck gave the arrest signal. Agents Gade and Rospond testified that they, along with other officers, arrived wearing vests with "POLICE" on the front and "DEA" on the back. Martinez fled on foot. He testified that he did so instinctively. After he was caught and handcuffed, he did not say anything about being a cooperator.

Once in custody, Martinez received *Miranda* warnings in English and in Spanish from Officer Elias. Martinez then dictated a statement and signed it after Elias wrote what he said in English and confirmed the translation line-by-line with Martinez. He admitted both of the sales, explained that Angel had fronted the pound of methamphetamine, and said that he planned to pocket $300 from that sale. The written statement does not mention Martinez's purported cooperation with the DEA, although Martinez testified that by the time he signed the statement he had told the agents that he engaged in the drug deals to help them nab Angel. Elias and Gade deny that.

In finding Martinez guilty, the district court thought it implausible that as a novice in the drug trade Martinez was able to meet a large-scale drug supplier and within weeks persuade him to front Martinez a pound of methamphetamine. The court also viewed Martinez's flight from the officers after his delivery to Zbrozck strong evidence that Martinez wasn't cooperating and did not believe otherwise. Moreover, the court reasoned that Martinez's failure to contact DEA agent Gade before or after the first sale showed that he didn't believe he was cooperating. The court added that, even if Martinez had believed he was working for the DEA, his belief was unreasonable given his testimony that Quinonez told him that "Gade" was trying to set him up.

After the verdicts Martinez moved for a judgment of acquittal or, alternatively, for a new trial. He argued that the district court's last conclusion was erroneous because the judge had confused Ocampo's friend, Mike Gade, with agent Lou Gade, and thus assumed that Martinez could not reasonably have believed he was working for an agent who was trying to set him up. Martinez urged the court to enter a judgment of acquittal or at least reevaluate the evidence independent of the court's mistake about "Gade." The district court acknowledged its mistake but denied the motion. The court explained that, even if Martinez wasn't told that a DEA agent was trying to set him up, it still was unreasonable for him to proceed with the deals knowing that *someone* was trying to set him up, particularly when, as Martinez acknowledged, he had not made any formal arrangement with the DEA. The court clarified, moreover, that the reasonableness of Martinez's belief was not a critical factor in the verdicts because Martinez's entire testimony was not credible.

**II.**

Counsel and Martinez first consider whether Martinez might challenge the district court's handling of his posttrial motion. We agree with counsel that any argument would be frivolous.

With respect to Martinez's request for a judgment of acquittal, we would overturn his convictions only if no rational trier of fact could have found Martinez guilty beyond a reasonable doubt. *See United States v. Beaver*, 515 F.3d 730, 737 (7th Cir. 2008). Here Martinez admitted that he knowingly distributed methamphetamine; the only contested issue at trial was whether he reasonably believed that he was acting under the authority of DEA agents. The district court, perhaps relying on *United States v. Talbott*, 78 F.3d 1183 (7th Cir. 1996), found that the government had disproved Martinez's public-authority defense beyond a reasonable doubt. We have since clarified that when a defendant asserts a public-authority defense to a crime, like 21 U.S.C. § 841(a)(1), which on the element of mental state requires only proof that he knew about the facts constituting the offense, it is his burden to prove this excuse by a preponderance of the evidence. *See United States v. Jumah*, 493 F.3d 868, 872-75 (7th Cir. 2007). Thus the trial judge, as the finder of fact, evaluated the evidence under a standard far more favorable to Martinez than was authorized. But even judged under the district court's more generous standard, the evidence overwhelmingly supports the verdicts. Martinez never entered into a formal cooperation agreement, he never contacted agents before arranging his deals with Quinonez and Zbrozck, he was able to convince a methamphetamine supplier to front a significant quantity of drugs, he fled when the agents arrived after the second deal, and he never told the agents that he thought he was cooperating. Indeed, the only evidence that supported Martinez's position—his testimony—was found not credible by the district court, and we would defer to the court's

finding.  *See United States v. Biggs*, 491 F.3d 616, 621 (7th Cir. 2007); *United States v. McCaffrey*, 181 F.3d 854, 856-57 (7th Cir. 1999).

As for Martinez's alternative request for a new trial based on the district court's confusion about which "Gade" was trying to set up Martinez, *see* FED. R. CRIM. P. 33(a), we are skeptical that Martinez could even argue that he didn't get exactly what he asked for. This was a bench trial, and in that context the presiding judge may respond to a motion for a "new" trial by taking additional evidence and entering a new judgment. *See id.*  In effect, that is what happened here.  The trier of fact *did* reweigh the evidence, free of its earlier mistake, and concluded that the verdicts should stand.  And even if we characterize the court's action as a *denial* of Martinez's motion, the verdicts are overwhelmingly supported by the evidence, and thus we would not conclude that the court abused its discretion.  *See United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007).

Counsel and Martinez also consider whether to argue that the district court erred in admitting Martinez's confession.  Martinez testified that he did not understand the content of his written statement and signed it only because he had to as a condition of receiving medical treatment.  Since Martinez would be raising the suppression argument for the first time on appeal, and since neither he nor counsel has offered good cause for its tardiness, we would not review the claim.  FED. R. CRIM. P. 12(b)(3)(C), (e); *United States v. Johnson*, 415 F.3d 728, 731 (7th Cir. 2005).  And even if Martinez could show good cause that would allow us to review the claim, he would then have to establish that the confession was involuntary and that admitting it was plain error.  *Id.* at 731-32.  But Martinez did not offer credible evidence that his confession was involuntary, and anyway the district court explicitly stated that the confession was insignificant because it did not conflict with Martinez's testimony at trial. We agree with counsel, then, that an argument about the confession would be frivolous.

The remaining potential issues arise from Martinez's sentencing, and here counsel first evaluates whether there is a nonfrivolous argument that the district court erred in finding that Martinez was ineligible for the "safety valve," which allows first-time offenders to be sentenced below a statutory minimum if they meet certain requirements.  *See* 18 U.S.C. § 3553(f); U.S.S.G. §§ 2D1.1(b)(11), 5C1.2.  The district court found that Martinez was ineligible because he did not fully and truthfully cooperate with the government.  *See* 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5).  We would reverse that finding only if it is clearly erroneous, *United States v. Olivas-Ramirez*, 487 F.3d 512, 516 (7th Cir. 2007), and it is not. Martinez never came clean about his own role in the crimes, not even after the district court found that his public-authority defense was a sham.  As far as this record shows, Martinez never gave the government useful information about "Angel" (if he exists), and he never offered any information about his relationship with Ocampo.  Accordingly, we agree with

counsel that it would be frivolous to challenge the district court's finding that Martinez was not eligible for safety-valve treatment.

Counsel next considers whether to challenge the district court's calculation of the total offense level, which included no reductions for minor participation, *see* U.S.S.G. § 3B1.2, or acceptance of responsibility, *see id.* § 3E1.1. Although advisory, the guidelines still must be properly calculated. *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006). Because Martinez did not object to the guidelines calculations, he at best has forfeited any challenge, *see United States v. Jaimes-Jaimes*, 406 F.3d 845, 848-49 (7th Cir. 2005), and limited our review to a search for plain error, *see United States v. Wainwright*, 509 F.3d 812, 815 (7th Cir. 2007). We agree with counsel that the proposed arguments would be frivolous.

First, we could not conclude that the district court committed plain error by not giving Martinez a mitigating-role reduction. The district court understandably found that Martinez played a significant—even central—role in the charged offenses: he arranged the deals, produced large quantities of methamphetamine, and expected to profit from the transactions. *See United States v. Sandoval-Vasquez*, 435 F.3d 739, 745 (7th Cir. 2006); *United States v. McKee*, 389 F.3d 697, 700 (7th Cir. 2004).

We likewise could not conclude that the district court committed plain error by denying a reduction for acceptance of responsibility. Martinez put the government to its burden of proof at trial, thereby rendering himself generally ineligible for the reduction. *See* U.S.S.G. § 3E1.1 cmt. n.2; *United States v. Hicks,* 368 F.3d 801, 808 (7th Cir. 2004). And his own testimony denying his guilt demonstrates that he did not accept responsibility.

Counsel also considers whether Martinez could challenge the reasonableness of his prison sentence but rightly concludes that such a challenge would be frivolous. Martinez's sentence is at the bottom of a properly calculated guidelines range and thus would be presumed reasonable on appeal. *See United States v. Rita*, 127 S. Ct. 2456, 2462-63 (2007); *United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110 (7th Cir. 2006). Counsel is unable to articulate any reason why the presumption would be overcome. The district court gave detailed and meaningful consideration to relevant factors in 18 U.S.C. § 3553(a), *see United States v. Laufle*, 433 F.3d 981, 987 (7th Cir. 2006), for example, discussing why he believed the prison's initial inattention to Martinez's medical problems weighed in favor of a sentence at the bottom of the guidelines range. Ultimately, the undisputed drug quantity drove the sentence.

Finally, Martinez informs us that he wishes to argue that he received ineffective assistance of counsel. Any such claim, however, is better suited to collateral attack, at which

time a full record may be developed.  *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *United States v. Harris*, 394 F.3d 543, 557-58 (7th Cir. 2005).

Accordingly, counsel's motion to withdraw is GRANTED, and Martinez's motion for the appointment of substitute counsel is DENIED.  The appeal is DISMISSED.